[L. A. No. 7031.   In Bank.—February 23, 1922.]

## MIDLAND OIL FIELDS COMPANY, LIMITED (a Corporation), Respondent, v. M. RUDNECK et al., Appellants.

[1.] PUBLIC LANDS—OIL CLAIMS—DRILLING RIG—FIXTURES—PERSONAL PROPERTY.—Where boilers and other machinery and tools comprising an oil-well drilling "rig," together with the timber and other materials of the derrick belonging thereto, were placed on a placer mining claim for the purpose of boring a well to develop oil, under a contract between the claimant of the land and the one placing the property on the land, by which it was agreed that the latter might at any time, upon notice, abandon the work, or if the work ceased for a certain period the contract might be terminated by the claimant, and in either case all the personal property placed on the land might be removed by the contractor, and the evidence shows that the boilers and derricks were not permanently fastened to the ground and were not intended to be permanent unless oil was found and then only for such time as the well continued to yield oil, the property placed on the claim remained personal property so far as the respective rights of the

owner of the mining claim and the contractor and his successor in interest were concerned.

[2] ID.—OIL LAND—WITHDRAWAL FROM ENTRY—RIGHTS OF CLAIMANT. Under the act of July 17, 1914 (38 U. S. Stats. 509), providing, among other things, that lands which have been withdrawn from entry on account of supposed deposits of oil or gas therein shall be subject to homestead entry with a reservation of all deposits on account of which the lands were withdrawn, the claim of one who made in good faith a placer mining location for the purpose of developing oil prior to the passage of the act and was prosecuting the work leading to the discovery of oil at the date of a presidential order of withdrawal of the lands was valid.

[3] ID.—HOMESTEAD ENTRY—RIGHTS UNDER—PERSONAL PROPERTY ON LAND.—Under said act of 1914 a homestead entryman of the land, under an entry made subsequent to· the passage of said act, could not acquire any title to oil deposits on such land, nor could he acquire by his entry any rights in an oil-drilling rig placed on the land prior to the passage of said act by one under contract to bore an oil well for a claimant who had located a placer claim on the land prior to the passage of the act, as such rig, if a fixture of the land at all, was a fixture to the rights in the oil deposits which were reserved to the government.

APPEAL from a judgment of the Superior Court of Kern County. J. W. Mahon, Judge. Affirmed.

The facts are stated in the opinion of the court

Kaye, Siemon & Abel and Kaye & Siemon for Appellants.

George E. Whitaker for Respondent.

SHAW, C. J.—The defendants appeal from the judgment. The complaint states a cause of action to recover damages for the taking and conversion of plaintiff's personal property by the defendants. It consisted of boilers and other machinery and tools comprising an oil-well drilling "rig," together with the timber and other materials of a derrick belonging thereto.

The defendants claim that at the time of the taking and conversion they, and not the plaintiff, were the owners of the property.

The court found that the plaintiff was the owner of the property; that the defendants, in February, 1918, wrongfully took the same and converted it to their own use, to

the damage of the plaintiff in the sum of eighteen hundred dollars, for which sum it gave judgment for the plaintiff.

The main controversy arises upon the question whether the boilers and derrick were fixtures and as such a part of the realty at the time one Enwright, from whom the defendants bought the property, made his entry upon the land as a homesteader under the laws for the disposal of public lands of the United States, or was personal property.

Enwright entered upon the land on October 25, 1915, and on June 24, 1916, he duly made his application for a homestead entry thereof. He has occupied the land ever since his entry. At that time the property in question was on the land. On February 15, 1918, claiming it all as his own, he sold it to the defendants, who immediately took down the timbers of the derrick, removed them and the boilers, tools, and other materials comprising the rig from the land, and converted them to their own use. The right of the defendants to take the property depends on the question whether the title thereto passed to Enwright as a part of the land when he entered it as a homestead and that, in turn, depends on certain facts which we will now relate.

On and prior to September 5, 1909, the land was vacant public land of the United States. On that day R. E. Graham and others lawfully located a placer mining claim on the land. The location notice was posted on that day and was duly recorded in the office of the county recorder of the county on September 28, 1909, which was within the thirty days allowed by the code. (Civ. Code, sec. 1426d.) The other locators thereafter conveyed their respective interests in the claim to said Graham. The location was made in good faith in the belief that the land contained deposits of oil. There had been no previous discovery and the design was to put down a well for that purpose as soon as convenient and thereupon to take out the oil, if any was found. To accomplish that purpose, Graham, on January 6, 1910, made a contract in writing with one McCray, whereby McCray was to begin drilling a well on the land within ninety days and continue the work to a depth of two thousand five hundred feet, if necessary. The contract provided that, upon written notice to Graham, McCray might at any time abandon the work; that if he ceased work for thirty days continuously Graham might, upon written notice, terminate

the agreement, and that in either case McCray should have the right to remove all personal property by him placed on the land, except the casing in the wells, if any there was. In pursuance of this contract the oil-drilling rig and other property was placed on the land by an assignee of McCray in March, 1910. Drilling was then begun and continued at intervals until some time in the year 1915. No oil was ever discovered.

The derrick was eighty-four feet high on a twenty-foot framed base of heavy timbers set on the surface of the ground. The boilers were set on the ground and a part thereof, known as the fire-box, was incased with brick to conserve the heat. The engine was placed upon timbers laid on the ground, but as it was taken away before the entry of Enwright, its character is not of any importance. There was evidence to the effect that boilers and derricks for the drilling of oil wells are not permanently fastened to the ground; that they are not intended to be permanent unless oil is found, and then only for such time as the well continues to yield oil. It is a matter of common knowledge that rigs of this character for the drilling of wells, either for oil or water, are moved about by the owner from place to place as wells are completed and other wells begun, or as the purpose of placing them in the particular place is accomplished or terminated.

[1] From all this evidence and this common knowledge the court below rightfully concluded that the property in controversy was personal property so far as the respective rights thereto of Graham as owner of the mining claim and McCray and his successors in interest, including the plaintiff, are concerned.

The defendants, as successors in interest to Enwright, claim that the title to the property nevertheless passed to Enwright by virtue of his homestead entry.

Enwright's title to the land was obtained from the United States after the passage by Congress of the act of July 17, 1914 (38 Stats. 509 [6 Fed. Stats. Ann., 2d ed., p. 613; U. S. Comp. Stats., secs. 4640a–4640c].) That act provides that lands which have been withdrawn from entry, whether before or after its passage, on account of supposed deposits of oil or gas therein, shall be subject to homestead entry, but it reserves, and re-

quires the homestead patent to reserve, to the United States
all deposits on account of which the lands so patented were
withdrawn, "together with the right to prospect for, mine,
and remove the same, such deposits to be subject to disposal
by the United States only as shall be hereafter expressly
directed by law." Also that "any person qualified to ac-
quire the reserved deposits may enter upon said lands with
a view of prospecting the same" (sec. 4640b), by giving
bond for the benefit of the homesteader for any damage to
his crops that might be caused by the prospecting for and
removal of such deposits.

A presidential order of the kind referred to in said act
of 1914, and withdrawing from entry the land in contro-
versy was made on September 27, 1909. It declared that it
was made on account of the petroleum deposits that might
be contained in the land and it provided that "All locations
or claims existing and valid on this date may proceed to
entry in the usual manner after field investigation and
examination."

On June 25, 1910, Congress passed an act as follows: "The
rights of any person who at the date of any order of with-
drawal heretofore or hereafter made, is a *bona fide* occupant
of oil or gas bearing lands, and who, at such date, is in
diligent prosecution of the work leading to the discovery of
oil or gas, shall not be affected or impaired by such order,
so long as such occupant shall continue in diligent prosecu-
tion of said work." (36 U. S. Stats. 847 [8 Fed. Stats.
Ann., 2d ed., p. 657; U. S. Comp. Stats., sec. 4524].)

[2] The claim of Graham and others located on Septem-
ber 5, 1909, was valid on September 27th, the date of the
presidential order of withdrawal. There is no claim that it
was not made in good faith, nor that the parties were not
at that time prosecuting the work leading to the discovery
of oil therein. Many things might require the delay of six
months in the actual beginning of drilling operations. But
whether valid or not as respects the government, or a sub-
sequent mining claimant, it was good against Enwright, for
he was not in privity with the United States with respect
to the oil-mining rights in the land, but took subject thereto.

[3] It is evident from the provisions of the act of 1914
that Enwright did not have and can never obtain, under his
homestead entry, or by a homestead patent thereunder, any

title to the oil deposits in the land. That title was reserved to the United States and it still remains in the United States, except in so far as those claiming under the location of Graham and others may have some right thereto. (*Son v. Adamson, ante,* p. 99 [204 Pac. 392].) It is also clear that the oil-drilling rig placed on the land by the plaintiff and its predecessors in interest was put there for the purpose of discovering said oil and removing the same, under the right gained by the mining location. If we admit for the moment that they were so annexed that they constituted fixtures, the result would be that they were fixtures to that interest in the realty in aid of the use of which they were affixed, that is, they became a part of that interest in the realty which the United States has reserved to itself and which Enwright could not obtain. It may be that the United States, if they were fixtures, could have claimed the property and could have granted it to other locators so as to give them a better title than that of the original claimants. But the title which the United States reserved in the oil deposits, and which would have included all forfeited fixtures appurtenant to such deposits, would not inure to the benefit of Enwright so as to pass the title to the oil-drilling fixtures to him. In any event, therefore, the defendants did not obtain title to the fixtures by their purchase from Enwright, assuming that they may have had that character with respect to the government.

But, as we have seen, they were not fixtures, as between the owners of the mining claim and the plaintiff, who was engaged in operating them to discover oil for the owners, but were personal property. The owners of the mining claim were authorized to remain on the land for the purpose of prosecuting the work of discovering oil therein. They were not trespassers when they put the drilling rig there for that purpose. The government alone had the right to claim a forfeiture. Defendants do not claim under anyone having a mining location thereon, and the government has not, so far as appears, declared any forfeiture. Under these circumstances, we are of the opinion that the title to the property, so far as Enwright and the defendants are concerned, remained in the plaintiff. It follows that the defendants had no right thereto and were guilty of a tort when they took the property and converted it to their own use.

Therefore, the evidence supports the findings and the judgment for the plaintiff was correct.

The judgment is affirmed.

Lennon, J., Shurtleff, J., Lawlor, J., Wilbur, J., Waste, J., and Sloane, J., concurred.